[No. A105826. First Dist., Div. One. Nov. 22, 2004.]

NORTHERN CALIFORNIA CARPENTERS REGIONAL COUNCIL et al., Plaintiffs and Respondents, v.
WARMINGTON HERCULES ASSOCIATES et al., Defendants and Appellants.

**COUNSEL**

Livingston & Mattesich Steven G. Churchwell, S. Craig Hunter, Daniel M. Fuchs and Stacy E. Gillespie for Defendants and Appellants.

Weinberg, Roger & Rosenfeld Michael B. Roger, Sandra Rae Benson, Patricia M. Gates and Roberta D. Perkins for Plaintiffs and Respondents.

## Opinion

**SWAGER, J.**—This appeal arises from an action for unfair business practices brought by the Northern California Carpenters Regional Council (hereafter Carpenters Council) and Cliff Drescher (hereafter collectively Plaintiffs) against building contractors and subcontractors (hereafter Defendants) engaged in the development of a housing project in the City of Hercules (hereafter City). Nine Defendants appeal an order denying their motion to strike the complaint pursuant to Code of Civil Procedure section 425.16, commonly known as the anti-SLAPP statute. We affirm.

### PROCEDURAL AND FACTUAL BACKGROUND

The litigation arises from the development of a planned housing development called Victoria by the Bay on the site of a former oil refinery within the City. In January 2001, the City and the Hercules Redevelopment Agency (hereafter Agency) contracted with an entity called Hercules Victoria to remediate on-site contamination, construct infrastructure improvements, and then develop approximately 206 acres on this site. The Agency agreed to give Hercules Victoria financing assistance and to reimburse its costs from the increased real property taxes generated by the development.

Two years earlier, the Agency had adopted a Prevailing Wage Policy providing that workers on qualified construction projects would "be paid wages not less than the per diem rate determined to be the prevailing wage rate by the Director of the California Department of Industrial Relations pursuant to California Labor Code section 1773 et seq. or any successor statutes."

After performing its work of remediation and infrastructure improvement, Hercules Victoria sold portions of the project to builders, including William Lyon Homes and Warmington Homes California, pursuant to Purchase Agreements and Development Agreements. These Agreements contained substantially identical provisions requiring the builders to abide by the Prevailing Wage Policy of the Agency and a "Project Labor Agreement" with unions representing plumbers and electrical workers. The builders then entered into subcontracts with various parties, including the other Defendants, for the construction of private residences on the site.

On July 2, 2003, Plaintiffs filed a complaint alleging that Defendants breached the wage obligations in the Purchase Agreements and Development Agreements by failing to pay, or to require subcontractors to pay, workers not covered by a Project Labor Agreement at a rate equal to the prevailing wage rate as determined by the Department of Industrial Relations. A first amended

complaint was filed on September 15, 2003. Plaintiff Carpenters Council is a labor organization within the meaning of the National Labor Relations Act (29 U.S.C. § 152(5)) and Plaintiff Cliff Drescher is an individual residing in Hercules, California. The named Defendants include builders Warmington Hercules Associates, Warmington Homes California, William Lyon Homes, and six contractors.

The complaint alleges that Defendants have engaged in, and continue to engage in, unlawful and unfair business practices within the meaning of Business and Professions Code section 17200 consisting of violation of the Agency's Prevailing Wage Policy, various provisions of the Labor Code, and the wage obligations of the Purchase Agreements and Development Agreements. The complaint prays for injunctive relief, an equitable accounting, and an award of restitution, among other forms of relief.

Nine Defendants filed a motion to strike pursuant to the anti-SLAPP statute, Code of Civil Procedure section 425.16. Attached to the motion was a request for a coverage determination, which the builders filed with the Director of the Department of Industrial Relations on January 14, 2003, seeking a determination that the Labor Code provisions relating to payment of the prevailing wage in public works did not apply to the activities of the builders in constructing homes in the development. The motion was predicated on the theory that the filing of the complaint for unfair business practices was in retaliation for Defendants' action in seeking an opinion on this issue of statutory interpretation.

The trial court denied the motion to strike in an order filed February 11, 2004. The order found that "defendants have not met their threshold burden of showing that the first amended complaint arises from exercise of their protected rights. The first amended complaint, on its face, indicates that it arose not from the filing of a DIR [Department of Industrial Relations] petition, but from the defendants' alleged failure to pay prevailing wages on this project." Defendants joining in the motion filed a notice of appeal.

A. *Applicability of Code of Civil Procedure Section 425.17*

The appeal presents the threshold issue of whether Code of Civil Procedure section 425.17 mandates affirmance of the trial court's denial of Defendants' motion to strike under the anti-SLAPP statute. If so, we do not need to discuss the merits of the motion to strike. Section 425.17 was intended to curb abuse of the anti-SLAPP statute and specifically provides that the statute shall not apply to certain described actions. It was signed into law on September 6, 2003, shortly after the complaint was filed, and became effective on January 1, 2004, after the anti-SLAPP motion was filed but before the trial court ruled on the motion. (Stats. 2003, ch. 338, § 1.)

We find that Plaintiffs' action comes within subdivision (b) of Code of Civil Procedure section 425.17, which provides in relevant part: "Section 425.16 does not apply to any action brought solely in the public interest or on behalf of the general public if all of the following conditions exist: [¶] (1) The plaintiff does not seek any relief greater than or different from the relief sought for the general public . . . . [¶] (2) The action, if successful, would enforce an important right affecting the public interest, and would confer a significant benefit, whether pecuniary or nonpecuniary, on the general public or a large class of persons. [¶] (3) Private enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter."

The complaint alleges that Plaintiffs brought the action "on behalf of themselves, on behalf of the general public and on behalf of all others similarly situated," but it does not in fact seek any monetary or injunctive relief directly benefiting Plaintiffs. The wronged class is alleged to be nonunion workers on Defendants' projects who were not paid the prevailing wage. The Carpenters Regional Council obviously does not belong to the class of nonunion workers, and the complaint does not allege that the individual Plaintiff, Cliff Drescher, belongs to this class. Instead, the complaint seeks to vindicate public policy by assuring enforcement of the City's Prevailing Wage Policy. Thus, Plaintiffs bring the action "solely in the public interest" and do "not seek any relief greater than or different from the relief sought for the general public . . ." within the meaning of the introductory language of subdivision (b) and subdivision (b)(1) of the Code of Civil Procedure section 425.17.

With respect to Code of Civil Procedure section 425.17, subdivision (b)(2), the City's Prevailing Wage Policy serves the same public interests as the Labor Code provisions requiring payment of the prevailing wage on public works. First, the Prevailing Wage Policy permits "union contractors to compete with nonunion contractors" (*Lusardi Construction Co. v. Aubry* (1992) 1 Cal.4th 976, 987 [4 Cal.Rptr.2d 837, 824 P.2d 643]; *Division of Lab. Stds. Enforcement v. Ericsson Information Systems, Inc.* (1990) 221 Cal.App.3d 114, 123 [270 Cal.Rptr. 75]; *O. G. Sansone Co. v. Department of Transportation* (1976) 55 Cal.App.3d 434, 458 [127 Cal.Rptr. 799]), and thereby serves the policy favoring collective bargaining in the private sector. (Lab. Code, § 923.) Secondly, the Prevailing Wage Policy "benefit[s] the public through the superior efficiency of well-paid employees." (*Lusardi Construction Co. v. Aubry, supra,* at p. 987; see *Division of Lab. Stds. Enforcement v. Ericsson Information Systems, Inc., supra,* at p. 123; *O. G. Sansone Co. v. Department of Transportation, supra,* at p. 458.) As stated in the legislative findings for Labor Code section 1771.9 (Stats. 2003, ch. 851, § 1), "[p]ayment of the prevailing rate of per diem wages to workers employed on public works projects is necessary to attract the most skilled

workers for those projects and to ensure that work of the highest quality is performed on those projects."

The Prevailing Wage Policy also serves the goal of protecting "employees from substandard wages that might be paid if contractors could recruit labor from distant cheap-labor areas." (*Lusardi v. Construction Co. v. Aubry, supra,* 1 Cal.4th 976, 987; see *Division of Lab. Stds. Enforcement v. Ericsson Information Systems, Inc., supra,* 221 Cal.App.3d 114, 123.) By assuring that public contracts will not "undermine the wage base in [the] community" (Stats. 2003, ch. 851, § 1), the policy serves to protect all "private sector workers" in the community (*Division of Lab. Stds. Enforcement v. Ericsson Information Systems, Inc., supra,* at pp. 123–124)—clearly "a large class of persons" within the meaning of Code of Civil Procedure section 425.17, subdivision (b)(2). In this respect, the Prevailing Wage Policy is linked to the "public policy in favor of enforcing minimum labor standards." (*Independent Roofing Contractors v. Department of Industrial Relations* (1994) 23 Cal.App.4th 345, 351 [28 Cal.Rptr.2d 550]; Lab. Code, § 90.5.) But it recognizes that, to serve this public policy, it is necessary "to compensate nonpublic employees with higher wages for the absence of job security and employment benefits enjoyed by public employees." (*Lusardi Construction Co. v. Aubry, supra,* at p. 987; see *Division of Lab. Stds. Enforcement v. Ericsson Information Systems, Inc., supra,* at p. 123; *O. G. Sansone Co. v. Department of Transportation, supra,* 55 Cal.App.3d 434, 458–460.)

Finally, Plaintiffs' action comes within subdivision (b)(3) of Code of Civil Procedure section 425.17. The complaint alleges that private enforcement action is necessary "[b]ecause the City of Hercules has failed to take any action to enforce the City's Wage Policy on the Project." The financial burden on Plaintiffs is disproportionate to their stake in the action. The Carpenters Regional Council and Drescher bring the action to vindicate a public interest relating to enforcement of the Prevailing Wage Policy but do not themselves belong to the under-compensated class of nonunion workers.

B. *Retroactive Application of Section 425.17*

Defendants argue that Code of Civil Procedure section 425.17 should not be applied retroactively to an action and motion to strike that were filed in 2003 before the effective date of the statute. We addressed the retroactivity of section 425.17 in *Physicians Com. for Responsible Medicine v. Tyson Foods* (2004) 119 Cal.App.4th 120 [13 Cal.Rptr. 3d 926] and adhere to our decision in that case.

The general canon of interpretation is "that statutes are not to be given a retrospective operation unless it is clearly made to appear that such

was the legislative intent." (*Aetna Cas. & Surety Co. v. Ind. Acc. Com.* (1947) 30 Cal.2d 388, 393 [182 P.2d 159].) The repeal of a statutory remedy, however, presents entirely distinct issues. "A well-established line of authority holds: ' " 'The unconditional repeal of a special remedial statute without a saving clause stops all pending actions where the repeal finds them. If final relief has not been granted before the repeal goes into effect it cannot be granted afterwards, even if a judgment has been entered and the cause is pending on appeal. *The reviewing court must dispose of the case under the law in force when its decision is rendered.*' " [Citations.]' [Citations.]" (*Physicians Com. for Responsible Medicine v. Tyson Foods, supra,* 119 Cal.App.4th 120, 125–126; see *Governing Board v. Mann* (1977) 18 Cal.3d 819, 829 [135 Cal.Rptr. 526, 558 P.2d 1]; *Beckman v. Thompson* (1992) 4 Cal.App.4th 481, 489 [6 Cal.Rptr.2d 60].)

■ "We regard the anti-SLAPP statute as being a statutory remedy falling within these precedents. The anti-SLAPP statute provides a procedure for the early dismissal, before trial or discovery, of meritless cases aimed at chilling first amendment rights. To invoke the statute, a defendant must file a motion to strike directed at the plaintiff's pleadings and supported by affidavits. All discovery proceedings are stayed upon the filing of the motion. (Code Civ. Proc., § 425.16, subd. (g).) To secure dismissal of the action, the defendant must make a prima facie showing that the cause of action arises from 'any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue' as that phrase is defined by subdivision (e) of the section. If the defendant succeeds in making this showing, the burden then shifts to the plaintiff to establish a reasonable probability that the plaintiff will prevail in the action. (Code Civ. Proc., § 425.16, subd. (b)(1).) An order granting dismissal under this procedure is subject to appeal. (Code Civ. Proc., § 425.16, subd. (j).)" (*Physicians Com. for Responsible Medicine v. Tyson Foods, supra,* 119 Cal.App.4th 120, 127.)

■ The enactment of Code of Civil Procedure section 425.17 had the effect of repealing the remedy of an anti-SLAPP motion as it applies to the present case. Accordingly, Defendants were deprived of this remedy when the statute became effective, and we have no need to consider the merits of their motion. Our conclusion is supported by *Metcalf v. U-Haul International, Inc.* (2004) 118 Cal.App.4th 1261, 1265–1266 [13 Cal.Rptr. 3d 686], and *Brenton v. Metabolife International, Inc.* (2004) 116 Cal.App.4th 679, 688–691 [10 Cal.Rptr. 3d 702]. We attach no significance to Defendants' observation that certain other decisions decided in 2004 did not address the issue of the retroactive application of the statute.

## DISPOSITION

The order denying the motion under Code of Civil Procedure section 425.16 is affirmed.[1]

Marchiano, P. J., and Stein, J., concurred.

Appellants' petition for review by the Supreme Court was denied February 16, 2005.

---

[1] We grant Defendants' request for judicial notice filed August 31, 2004.